IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JAKE WILLIAMS | § | |
|     TDCJ NO. 719327 | § | |
| | § | |
| v. | § | C.A. NO. C-06-437 |
| | § | |
| LIEUTENANT PENA, ET AL. | § | |

**MEMORANDUM AND RECOMMENDATION
ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

In this civil rights action, plaintiff Jake Williams claims that defendants failed to provide him with medical treatment upon his arrival at the McConnell Unit, following a use of force and transfer from the Connally Unit, in deliberate indifference to his serious medical needs. (D.E. 1). Defendants move for summary judgment to dismiss plaintiff's claims for failure to exhaust administrative remedies, and in the alternative, and on the grounds of qualified immunity. (D.E. 42). Plaintiff has filed objections to the summary judgment motion (D.E. 44), to which defendants have filed a reply. (D.E. 45).

For the reasons stated herein, it is respectfully recommended that the Court grant defendants' motion for summary judgment and dismiss plaintiff's claims with prejudice for failure to exhaust administrative remedies.

**I.      JURISDICTION**

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

## II.  PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is an inmate in the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ-CID").  He filed his original complaint on October 2, 2006, alleging excessive force, deliberate indifference to his serious medical needs, conspiracy, retaliation, and falsification of records, against numerous prison officials and employees at the Connally Unit in Kenedy, Texas, and the McConnell Unit, in Beeville, Texas.  (D.E. 1). In particular, plaintiff claimed that he was the victim of excessive force at the Connally Unit, and that following the excessive force, he was transferred to the McConnell Unit, where he was denied proper medical attention. Id.  By order entered November 13, 2006, plaintiff's claims against the Connally Unit defendants were severed and transferred.  (D.E. 6). Thereafter, a Spears[1] hearing was held on January 18, 2007 on plaintiff's claims concerning the events at the McConnell Unit.  Following the hearing, service was ordered on plaintiff's deliberate indifference claims against Lieutenant Barbara Pena, Cynthia Heibel, a nurse practitioner ("NP"), and Salvacion Christensen, a vocational nurse.  (D.E. 12).

On March 22, 2007, defendants filed their answers and raised the defense of qualified immunity.  (D.E.  23).  On June 29, 2007, defendants filed the instant motion for summary judgment.  (D.E. 42).   On July 24, 2007, plaintiff filed his objections to the summary judgment motion.  (D.E. 44).  Defendants have filed a reply to plaintiff's objections.  (D.E. 45).

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

### III.    SUMMARY JUDGMENT EVIDENCE AND UNCONTESTED FACTS

In support of their motion for summary judgment, defendants offer the following summary judgment evidence:

Ex. A:      Relevant portions of plaintiff's grievance records, with business record affidavit;

Ex. B:      TDCJ Office of the Inspector General Investigative Report concerning the September 29, 2005 use of force at the Connally Unit;

Ex. C:      Relevant portions of plaintiff's medical records, with business record affidavit; and

Ex. D:      Copy of TDCJ Offender Orientation Handbook.

(D.E. 42, Exs. A-D).

Plaintiff does not offer additional evidence in his summary judgment objections. (D.E. 44).

The evidence establishes the following facts:

On September 29, 2005, plaintiff was incarcerated at the Connally Unit.  (DX-B at 6). At approximately 10:30 a.m., a physical altercation occurred between plaintiff and a correctional officer.  Id. at 7.  A second officer then employed a chemical agent to subdue plaintiff.  Id.  A use of force was called, following which plaintiff was taken to the Connally Unit infirmary.  (DX-C at 6-7).  At the infirmary, plaintiff complained of headache, bilateral chest pain, and groin pain; he denied nausea and vomiting.  Id. at 6.  Upon examination, the physician's assistant ("PA") noted that both of plaintiff's eyes were puffy and hyperpigmented inferiorly, and sclera injected; however, the PA noted that plaintiff had a

history of eye injuries and allergies and had been treated numerous times for such eye problems.  Id.  No other areas of edema or ecchymosis were noted on his face.  Id.  Plaintiff's nose had a moderate amount of clear drainage, and initially, a small amount of blood, but this subsided very quickly.  Id.  Plaintiff had full range of motion of his neck.  Id.  No chest injuries were noted.  Id.  There was no tenderness to palpitation, and no areas of ecchychymosis.  Id.  Plaintiff's lungs were clear, his groin was within normal limits, and there were no other injuries noted.  Id.  Plaintiff ambulated with a normal gait, but with difficulty.  Id.  He had a strong chemical agent odor.  Id.

Thereafter, plaintiff was held in pre-hearing detention without further incident until his transfer to the McConnell unit that same day.[2]  Id.

Upon his arrival at the McConnell unit, plaintiff's van was met by Lieutenant Pena, Sergeant Nelson, and a five-man use of force team with a video camera.  (See D.E. 12 at 3).  He was escorted to medical for a "lock-up physical."  (DX-C at 10).  Plaintiff was first seen in the McConnell Unit infirmary by L.V.N. Christensen.  Id.  Nurse Christensen noted left periorbital edema with red sclera and clear discharge present, and she referred plaintiff to the nurse practitioner, Cynthia Hibel, for a more thorough evaluation.  Id.

At approximately 5:33 p.m.,  NP Heibel examined plaintiff.  (DX-A at 8-9).  Plaintiff's chief complaint was that he had been involved in a use of force at the Connally

---

[2] Plaintiff was charged in a disciplinary case with assaulting an officer, found guilty, and lost 74 days earned good time credit as a result of the altercation between him and the Connally Unit officer.  (DX-B at 7).

Unit.  Id. at 8.  Upon examination, NP Heibel noted edema of the peribortal structures and sclera, left side only.  Id.  She also noted diffuse but greatly involved scleral hematoma, but that his cornea was clear, and plaintiff related that his vision was normal.   Id.  NP Heibel did not feel any fracture of the periorbital bones, and plaintiff stated that he felt no pain upon palpitation, except to the eyelid.  Id.  NP Heibel's visual inspection of the interior of plaintiff's eye was within normal limits.  Id.   NP Heibel's assessment was contusion of periorbital structures, left eye, and sclera hematoma, left.  Id.  at 9.  Her plan was to apply ice to the swollen area, x-ray the left orbit, and have plaintiff return the following morning for follow-up.  Id.  She prescribed him Tylenol for pain.  Id.

The next morning, September 30, 2005, plaintiff was seen in the McConnell Unit infirmary at approximately 11:00 a.m. by NP Lynne Cherry.   (DX-C at 3-5).  NP Cherry noted that plaintiff had been seen the day prior and was now being seen for follow-up care and a mental health evaluation.  Id. at 3.  Plaintiff admitted to having a headache, but denied any other problems, including loss of consciousness.  Id.   Upon examination, NP Cherry noted that plaintiff's left eye had some swelling and red sclera periorbital edema.  Id. at 4.  His pupils were intact, round, and reactive.  Id.  The rest of his examination was essentially normal.  Id.  NP Cherry confirmed plaintiff's x-ray appointment and noted that he had a lay-in pass for Monday with radiology.  Id.  He was prescribed Tylenol for generalized pain.  Id.

On October 4, 2005, plaintiff submitted a sick call request asking to see a doctor and complaining that he was being denied medical care for his left eye, right ribs, and right leg that had been injured in the September 29, 2005 use of force.  (DX-C at 13-14).  Plaintiff was

seen by NP Heibel that same day.  (DX-C at 1).  Upon examination, NP Heibel noted that the redness and swelling to plaintiff's left eye was decreasing, his cornea was clear, and he subjectively reported that his vision was normal.  Id.  NP Heibel felt no fracture of the periorbital bones.  Id.  Plaintiff's x-rays revealed no gross fracture of facial structures.  Id. Plaintiff continued to report no pain on palpation of orbit except the eyelid.  Id.  His fundoscopic exam was within normal limits.  Id.  He had no pain with maxillary pressure or with wide jaw movements.  Id.  NP Heibel explained to plaintiff that his x-rays had been sent to a radiologist for interpretation.  Id.   She prescribed him Ibuprofen for his mild headache. Id.

On September 30, 2005, plaintiff filed a Step 1 grievance, Grievance No. 2006021129, complaining that, on September  29, 2006 at the Connally Unit, he was beaten by three or more officers using night sticks.  (DX-A at 5-6).  By response dated November 10, 2005, plaintiff's grievance was denied.  Id. at 6.  It was noted that his grievance was documented as the September 29, 2005 Use of Force,  #MA-04649-09-05 [DX-B], and that a copy of the grievance had been placed in the use of force file.  Id.  There is no corresponding Step 2 grievance.

On October 3, 2005, prison officials received a Step 1 grievance, Grievance No. 2006069964, filed by plaintiff in which he complained that his personal property had not been transferred from the Connally Unit to the McConnell Unit.  (DX-A at 7).  There is no response to this grievance, nor is there a corresponding Step 2 grievance addressing plaintiff's personal property.

On November 15, 2006, plaintiff filed a Step 1 grievance, Grievance No. 2006047466, stating that in May 2003, he had been transferred off the McConnell Unit for safety reasons due to threats from White gang members, and that, since his return, he realized that the same threat was still present and that his life was in danger.  (DX-A at 3-4).  By response dated December 12, 2005, Warden Jackson stated that officials were aware of his life endanger claims by virtue of his grievances.  Id. at 4.  The Unit Classification Committee ("UCC") reviewed plaintiff's claims on November 23, 2005; however, it denied his request for a Unit transfer, but granted his request that he not be housed with active ABT members.  Id. at 4. As such, plaintiff remained housed at the McConnell Unit in administrative segregation.  Id.

On December 8, 2006, plaintiff filed a Step 2 grievance appealing the denial of Grievance No. 2006047466 and requesting a unit transfer.  (DX-A at 1-2).  His appeal was denied on November 11, 2006.  Id. at 2.

## IV.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all

justifiable inferences in favor of the party opposing the motion.  <u>Caboni v. Gen. Motors Corp.</u>, 278 F.3d 448, 451 (5th Cir. 2002).  The Court may not weigh the evidence, or evaluate the credibility of witnesses.  <u>Id.</u>  Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e); <u>see</u> <u>also</u> <u>Cormier v. Pennzoil Exploration & Prod. Co.</u>, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); <u>Martin v. John W. Stone Oil Distrib., Inc.</u>, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions).  Unauthenticated and unverified documents do not constitute proper summary judgment evidence.  <u>King v. Dogan</u>, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings.  Fed. R. Civ. P. 56(e); <u>Anderson</u>, 477 U.S. at 248.  "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted."  <u>Caboni</u>, 278 F.3d at 451.  "If

reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." Anderson, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248.

## V.   DISCUSSION

**A.**   **Failure to exhaust administrative remedies.**

Defendants move for summary judgment to dismiss plaintiff's claims on the grounds that he has failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e.

The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

Unexhausted claims cannot be filed in federal court. See Jones v. Bock, 127 S. Ct. 910, 918-19 (2007). The exhaustion requirement applies to all inmate suits about prison life, whether involving general circumstances or specific incidents. Porter v. Nussle, 534 U.S. 516, 532 (2002); Clifford v. Gibbs, 298 F.3d 328, 330 (5th Cir. 2002). Moreover, a prisoner is required to exhaust his administrative remedies even if damages are unavailable through

9

the grievance process.    Booth v. Churner, 532 U.S. 731, 734 (2001); Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001).  The Supreme Court recently clarified that a prisoner must complete the administrative review process in accordance with all procedural rules, including deadlines, as a precondition to bringing suit in federal court.  Woodford v. Ngo, 126 S. Ct. 2378, 2382 (2006).  An inmate's failure to exhaust is an affirmative defense. See Bock, 127 S. Ct. at 921.

The Texas Department of Criminal Justice ("TDCJ") currently provides a two-step procedure for presenting administrative grievances.  Step 1 requires the prisoner to submit an administrative grievance at the institutional level.  Wendell v. Asher, 162 F.3d 887, 891 (5th Cir. 1998) (citing to TDCJ Administrative Directive No. AD-03.82 (rev. 1), Policy, ¶ IV (Jan. 31, 1997)).  After an investigation, the unit grievance investigator prepares a report and makes a recommendation to the final decision maker, which may be the warden, assistant warden, facility administrator, assistant facility administrator, or health administrator.  Id. Step 2 permits the prisoner to submit an appeal to the division grievance investigator with the Institutional Division of the TDCJ.    Id.   After an investigation, the departmental grievance investigator prepares a report and makes a recommendation to the final decision maker for Step 2 of the process, which is the director, deputy director, regional director or assistant director.  Id.

The grievance procedure takes approximately ninety days to exhaust.  Wendell, 162 F.3d at 891.  Prisoners are allowed fifteen calender days to file a Step 1 grievance.  Id. (citing TDCJ Admin. Directive No. AD-03.82 (rev. 1), Policy ¶ VI (Jan. 31, 1997)).  The response

to the Step 1 grievance is due within forty days after receipt of the grievance.  Id.  The

prisoner then has ten days to submit an appeal.  Id.  The response to the Step 2 grievance is

due within forty days after receipt of the prisoner's appeal.  Id.  The TDCJ Inmate Grievance

System provides that, if an inmate does not receive a written decision within 180 days after

the grievance is filed, he may proceed with his other state or federal court remedies.  Tex.

Gov't Code § 501.008(d)(2).  A prisoner must pursue his grievance at both the Step 1 and

Step 2 levels in order to exhaust his administrative remedies.  See Johnson v. Johnson, 385

F.3d 503, 515 (5th Cir. 2004), citing Wright, 260 F.3d at 358.

The purpose of the exhaustion requirement is to alert prison officials of problems so

that the prison has a chance to address the claims before they reach federal court.  Woodford,

126 S. Ct. at 2388.  As acknowledged by the Supreme Court, Congress intended the

administrative process to "filter out some frivolous claims and foster better-prepared

litigation once a dispute did move to the courtroom, even absent formal factfinding."  Booth,

532 U.S. at 737.

Defendants argue that plaintiff has failed to exhaust his administrative remedies

because he did not file a Step 1 or Step 2 grievance raising his denial of medical care claims

against the defendants that he seeks to pursue in this action.  (See generally Ex. A).  In

support of their argument, defendants offer the business record affidavit of Sandra K.

Murphy who testifies that she is the Deputy Administrator of Offender Grievance for the

TDCJ, and that she has reviewed the grievance records for plaintiff for the time period of

September 2005 to October 2006, and has attached the copies of those grievances as Exhibit

A.  (See DX-A at Murphy Aff't).  According to Ms. Murphy, the only grievances filed by plaintiff during that time were: (1) Step 1 Grievance No. 2006021129, complaining about the September 29, 2005 Connally Unit use of force and the alleged "cover-up" by prison officials (DX-A at 5-6); (2) Step 1 Grievance No. 2006019964 concerning plaintiff's personal property (DX-A at 7); and (3) Step 1 and Step 2 Grievance No. 2006047466 concerning plaintiff's life in danger ("LID") claim.  (DX-A at 1-4).

Step 1 Grievance No. 2006019964, received by prison staff on October 3, 2005, addressed plaintiff's personal property only.  (DX-A at 7).  That grievance does not address plaintiff's claims against defendants.  Likewise, plaintiff's LID grievance does not address his deliberate indifference claims against the named defendants in this lawsuit  (DX-A at 3-4).  Although he raised his LID claim through the Step 2 level, he did not incorporate his claims of deliberate indifference.  (DX-A at 1-2).

In Grievance no. 2006021129, dated September 30, 2005, plaintiff complains about the September 29, 2005 use of force incident at the Connally Unit.  (DX-A at 5-6).  He does not complain he was denied medical attention at the McConnell Unit, nor does he mention Sergeant Pena, NP Heibel or Nurse Christensen by name.  Id.  However, in this grievance, plaintiff does allege that there is a conspiracy to "cover-up" the use of force that occurred at the Connally Unit, and he alleges that the "Medical Dept." at both the Connally Unit and the McConnell Unit are involved.  Id. In his summary judgment response, (D.E. 44), plaintiff argues that Grievance No. 2006021129 adequately exhausts his claims against defendants, claiming:

> In the above named Step 1, the Plaintiff clearly stated that the
> Medical Depart. on the Connally Unit and the McConnell Unit
> was [sic] ***covering up this use of force***.  The statement was
> clearly made and if ***any*** medical personnel violated medical
> rules ***by not giving*** medical treatment and falsified records in an
> attempt to cover-up wrong doing by TDCJ officers, then you
> have a criminal case of deliberate indifference....

(D.E.44 at 2, emphasis plaintiff's).

In fact, plaintiff's statement in the grievance itself was:

> ... I was then taken to the Deep space and beaten by Lt. Smith,
> Capt. Hinkle and a host of other officers which lead to major
> injury that are [sic] trying to be covered up by the Medical Dept.
> on the Connally Unit and the McConnell Unit.

(DX-A at 5-6).

In Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004), the Fifth Circuit discussed how much detail is required in a grievance for purposes of effectively exhausting administrative remedies.  The Court noted that one of the purposes of the exhaustion requirement is to give officials "'time and opportunity to address complaints internally.'" Johnson, 385 F.3d at 517 (citations omitted).  In addition, the nature of the complaint will influence how much detail is necessary.  Id.  For example, a complaint about a correctional officer would identify a specific person, whereas a complaint about a prison condition might not identify any individual.  Id.

Grievance No. 2006021129 simply does not provide the necessary detail that was available to plaintiff to support exhaustion of his deliberate indifference claims against defendants.  First, on its face, plaintiff is complaining only that the McConnell Unit medical

department is engaging in a cover-up of a use of force; he does not allege that specific individual defendants denied him medical care, despite the fact that such a claim would have been available to him at the time he filed the grievance.

In his summary judgment response, plaintiff now attempts to bootstrap his deliberate indifference claim under the argument that the cover-up of the use of force would necessarily include the denial of medical care. However, even if the Court were to accept that plaintiff's Step 1 grievance states such a claim, that defendants engaged in a cover-up of the use of force against plaintiff, including the denial of proper medical care, he failed to file a Step 2 grievance to satisfy exhaustion. As previously noted, a prisoner must file ***both*** the Step 1 and Step 2 grievance form to exhaust. Johnson, 385 F.3d at 515; Wright, 260 F.3d at 358.

The Fifth Circuit has recognized that the exhaustion requirement may, in rare circumstances, be excused where dismissal would be inefficient or would not further the purposes of the PLRA. Wilson, 151 F.3d at 295. For example, exhaustion may be excused where irregularities in the prison administrative system itself prohibited the plaintiff from doing so. Id.; see also Shah v. Quinlin, 901 F.2d 1241, 1244 (5th Cir.1990). An administrative remedy is not available where prison officials ignore or interfere with the prisoner's pursuit of relief. Id. And see Holloway v. Gunnell, 685 F.2d 150, 154 (5th Cir. 1982).

In his summary judgment response, plaintiff argues that he did file a Step 1 and Step 2 grievance, as referenced in his original complaint, but that defendants failed to process

those grievances such that exhaustion should be excused.  Defendants contend that there are

no missing grievances.

Attached to plaintiff's original complaint is a grievance dated July 24, 2006, well after

the use of force.  (See D.E. 1 at 26-27).  In this grievance, plaintiff complains:

> This I-127 is being filed because the Grievance office on
> Connally Unit will not send me grievances that was filed on the
> use of force on Connally on 9-29-05.  I have filed the same
> I-127 complaint 3 times and have not gotten any response to
> said complaint though the above actions are in violation of my
> constitutional rights in the 14th amendment due process of law
> and equal protection of the law.  All I'm asking is that each of
> my Step 1complaints be sent because I have not gotten any
> responses back yet and it have [sic] been over 7 months.  I keep
> getting the run around on these complaints.

(D.E. 1 at 26-27).  On July 24, 2006, this grievance, Grievance No. 2006203151 was denied

with the notation checked: "Grievable time period has expired."  Id. at 27.

Plaintiff fails to explain why grievances filed with the Connally Unit, even if not

processed or returned to him upon his request, would have any import or bearing upon his

claims of deliberate indifference against McConnell Unit employees Sergeant Pena, NP

Heibel or Nurse Christensen.  Nor does plaintiff explain why he did not simply file his

grievances at the McConnell Unit given the difficulty he was allegedly having at the

Connally Unit.  Further, his original Step 1 grievance complaining about the use of force and

alleged cover-up was filed and made part of the use of force report.  (See DX-A at 6).

Indeed, the response, dated November 10, 2005, and signed by Warden Bright reads:

> This was a documented Use of Force #MA-04649-09-05.  A
> copy of this grievance has been placed with the use of force

> documentation.  There is no evidence that your life was put in
> any danger.  No further action is warranted.

(DX-A at 6).    Regardless, however, even if plaintiff never received a response to his

grievances, as he alleges, the fact remains that, even in his subsequent grievances requesting

copies of previously filed grievances, he **never** alleges claims of deliberate indifference

against the defendants in this lawsuit.

Further, even if the Court were to find that plaintiff's September 30, 2005 grievance

did state a claim of deliberate indifference against defendants, plaintiff failed to file a Step

2 grievance to properly exhaust those claims.  Although he claims he was waiting for a

response to his Step 1 grievance, there was nothing to prevent him from submitting a Step

2 grievance.  Plaintiff fails to explain why he did not pursue his administrative remedies to

their conclusion.  Moreover, the fact that he has successfully exhausted his administrative

remedies on unrelated claims on prior occasions is some evidence that he understands the

TDCJ grievance process and has availed himself of it in the past.  (See DX-A at 1-4).  There

is no allegation that plaintiff was in any manner prevented from pursuing his administrative

remedies.

Plaintiff has failed to exhaust his administrative remedies and there are no grounds

to excuse exhaustion.  Accordingly, it is respectfully recommended that defendants' motion

for summary judgment to dismiss plaintiff's claims for failure to exhaust be granted.

**C.      Deliberate indifference to serious medical needs.**

In the alternative, defendants' move for summary judgment to dismiss plaintiff's claims that they were deliberately indifferent to his serious medical needs on the grounds that they are entitled to qualified immunity.

**1.      Qualified immunity.**

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Immunity in this sense means immunity from suit, not merely from liability.  Jackson v. City of Beaumont, 958 F.2d 616, 620 (5th Cir. 1992). "Qualified immunity is designed to shield from civil liability all but the plainly incompetent or those who violate the law." Brady v. Fort Bend County, 58 F.3d 173, 174 (5th Cir. 1995). In general, "qualified immunity represents the norm." Id.

The qualified immunity determination involves a two-step analysis: first, "'whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right.'" Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir. 2003) (quoting Price v. Roark, 256 F.3d 364, 369 (5th Cir. 2001)).  If a constitutional violation is alleged, the Court must next determine "whether the right was clearly established – – that is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 624.  Once defendants have invoked the defense of qualified immunity, the burden shifts to plaintiff to show that the

defense is inapplicable.  McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).

The threshold question in a qualified immunity analysis is whether a constitutional right would have been violated on the facts alleged.  Saucier v. Katz, 533 U.S. 194, 200 (2001).

### Step 1 – Constitutional violation.

Deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983."  Estelle v. Gamble, 429 U.S. 97, 105 (1976). "Deliberate indifference describes a state of mind more blameworthy than negligence"; there must be "more than ordinary lack of due care for the prisoner's interests or safety." Farmer v. Brennan, 511 U.S. 825, 835 (1994) (construing Estelle, 429 U.S. at 104).  To establish an Eighth Amendment violation, an inmate must show that a prison official "act[ed] with deliberate indifference [and] exposed a prisoner to a sufficiently substantial risk of serious damage to his future health."  Id. at 37.

A mere disagreement with the level and type of treatment is not actionable under the Eighth Amendment.  Estelle, 429 U.S. at 107; Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997); Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995); Young v. Gray, 560 F.2d 201 (5th Cir. 1977).  An incorrect diagnosis does not state an Eighth Amendment claim because the deliberate indifference standard has not been met.  Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).  A "plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged

18

in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Id. (quoting Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985)). Delay in treatment may be actionable under § 1983 only if there has been deliberate indifference and the delay results in substantial harm. Stewart v. Murphy, 174 F.3d 530, 537 (5th Cir. 1999); Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993). Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference. Banuelos, 41 F.3d at 235.

The uncontroverted evidence in this case establishes that defendants were not deliberately indifferent to plaintiff's serious medical needs.

Plaintiff claims that NP Heibel and Nurse Christensen acquiesced to the desires of Sergeant Pena to simply approve him for lock-up and to not treat his injuries. However, plaintiff's medical records soundly refute any claim for denial of proper medical care by these two defendants. (See DX-C at 8-9). The medical notes indicate that plaintiff was thoroughly examined by NP Heibel, and that she detailed his injuries in his medical record. Id. She specifically asked plaintiff about his pain and his vision. Id. She paid particular attention to his eyes, face and jaw. Id. She prescribed him ice and Tylenol to assist with the pain and swelling, and she ordered x-rays for further evaluation. Id. He was seen the following morning and his x-ray appointment, as well as lay-in pass, were confirmed. Id. at 3-5.

NP Heibel then saw plaintiff five days later, on October 4, 2005, in response to his sick call request. (DX-C at 1-2). Again, she conducted a complete evaluation. Id. She

noted that the swelling and redness had decreased, she informed plaintiff that his x-rays revealed no gross facial fractures, and that they had been sent to a radiologist for further interpretation. Id. Plaintiff denied vision problems, nausea, or vomiting. Id.  In fact, despite his complaints of pain in his sick call request, he reported only a mild headache to NP Heibel, and she prescribed him Ibuprofen. Id.  Indeed, neither in his complaint nor in his summary judgment response does plaintiff explain what he believes NP Heibel should have done differently or failed to do in addressing his medical needs on September 29 and October 4, 2005.

Plaintiff's "claim" against Nurse Christensen was that she called for NP Heibel to examine plaintiff after reviewing the extent of his injuries.  Clearly, the fact that a vocational nurse called for a nurse practitioner's assistance in accessing an individual's injuries does not state a constitutional violation. Plaintiff offers no facts to refute the medical records concerning the care that he received at the McConnell Unit in general, and particularly, by NP Heibel and Nurse Christensen.  He does not deny that was he was seen by NP Heibel or Nurse Christensen.  His complaint at best is that these individuals might have given him "more" medical attention, but for their decision to follow Sergeant Pena's orders to hurry and clear him for lock-up.  Even if true, at best, this is a disagreement with the course of treatment he received, and is not actionable. Norton, 122 F.3d at 292. Defendants Heibel and Christensen saw plaintiff timely, examined him, made findings and assessments, and prescribed appropriate medications for his pain and comfort.  Plaintiff fails to state a claim of deliberate indifference against NP Heibel and Nurse Christensen.

As to Sergeant Pena, plaintiff claims that she attempted to influence the medical personnel to simply clear him for lock-up and to not consider thoroughly his injuries. As discussed above, however, even if she had instructed the medical personnel not to examine him, this order was not followed: he was examined, and his medical needs were addressed appropriately.  Thus, he was not injured as a result of any instructions or orders Sergeant Pena might have made, and therefore, plaintiff fails to state a claim against Sergeant Pena.  Further, his broad, conclusory allegations that Sergeant Pena was acting with malice to have others deny him medical care are insufficient to maintain his claim.  See e.g. Al-Ra'id v. Ingle, 69 F.3d 28, 32 (5th Cir. 1995).

### Step 2 – Objective reasonableness.

For a right to be clearly established under the second step of the qualified immunity analysis, "[t]he contours of that right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).  However, when the plaintiff fails to state a constitutional violation, as in this case, the Court need not examine whether the defendants' actions were reasonable.  See Saucier, 533 U.S. at 201 (if the facts alleged do not establish that the officer's conduct violated a constitutional right, then the qualified immunity analysis need proceed no further and qualified immunity is appropriate).

In this case, plaintiff has failed to establish the violation of a constitutional right. Therefore, defendants are entitled to the defense of qualified immunity.  Saucier, 533 U.S. at 201.

21

## VI.    **<u>RECOMMENDATION</u>**

Plaintiff has failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e prior to filing suit and there are no circumstances to excuse exhaustion.  Thus, it is respectfully recommended that defendants' motion for summary judgment to dismiss plaintiff's claims for failure to exhaust be granted.   Alternately, defendants have demonstrated that there is no genuine issue of a material fact as to their claim for qualified immunity, and it is recommended that summary judgment be granted in defendants' favor, and that plaintiff's deliberate indifference claims against defendants be dismissed with prejudice.

Respectfully submitted this 7th day of November, 2007.


_____
   B. JANICE ELLINGTON
   UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to FED. R. CIV. P. 72(b), 28 U.S.C. § 636(b)(1)(C) and Article IV, General Order No. 2001-6, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Services Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).